**ANTHONY DISTRIBUTORS, INC., and Anthony Distributing Company, Inc., Plaintiffs/Counter–Defendants,**

v.

**MILLER BREWING COMPANY, Defendant/Counter–Plaintiff.**

No. 94–1176–CIV–T–17.

United States District Court, M.D. Florida, Tampa Division.

Oct. 26, 1995.

Claude Hines Tison, Jr., Macfarlane, Ausley, Ferguson & McMullen, Tampa, FL, for plaintiffs.

A. Broaddus Livingston, Matthew D. Allen, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, PA, Tampa, FL, Dwight J. Davis, King & Spalding, Atlanta, GA, Sylvia H. Walbolt, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, FL, Michael W. Youtt, L. Joseph Loveland, King & Spalding, Houston, TX, for defendant.

Ronald Keith Cacciatore, Ronald K. Cacciatore, P.A., Tampa, FL, for movants, Doug Wood and Terry Burkardt.

William F. Jung, Black & Jung, P.A., Tampa, FL, for movants, Thomas Blair, Mark Anderson, Thomas Rueckl, Rex Johnson, Donald Luchka and James Dunbar.

### ORDER ON PLAINTIFFS' MOTION TO DISMISS COUNTS II, IV, V, VI AND VII (IN PART) OF DEFENDANT'S SECOND AMENDED COUNTERCLAIM

KOVACHEVICH, District Judge.

This cause is before the Court on the Plaintiffs'/Counter–Defendants' Motion to Dismiss the Defendant's/Counter–Plaintiff's Amended Counterclaim (Docket No. 65), Counter–Defendants' Memorandum in Support and Counter–Plaintiff's Response (Docket Nos. 70 and 73).

### HISTORY

On May 8, 1995, Defendant/Counter–Plaintiff, Miller Brewing Company (hereafter Mil-

ler), filed a seven (7) count counterclaim against Plaintiffs/Counter–Defendants, Anthony Distributors, Inc. and Anthony Distributing Company, Inc., (hereafter Anthony) alleging breach of contract, federal trademark infringement, and various tort claims arising out of Counter–Defendants' status as the exclusive distributors of Counter–Plaintiff's products in Pinellas and Hillsborough Counties.

The following facts are asserted in the counterclaim and are relevant to the issues before this Court. On May 1, 1983, Anthony and Miller entered into new distributor agreements which remain in effect today. These agreements grant Anthony the exclusive right to distribute Miller's products bearing their registered trademark in the Tampa–St. Petersburg area markets. Among the duties set forth in the distributor agreements, is the requirement that Anthony uphold Miller's strict quality control standards by preventing products bearing expired code dates from reaching consumers, retrieving overage products from all retail accounts, and destroying any overage products at Anthony's own expense. Miller alleges despite repeated warnings concerning overage products, Anthony failed to comply with the distributor agreements.

Miller alleges failing to comply with the duties set forth in the distributor agreements was in part a scheme intended to fraudulently deliver overage products to retail accounts and consumers by Anthonys' representatives, "slamming, swapping, and dumping" overage products in order to increase sales. It is alleged that this scheme violates Miller's quality control standards and causes them to lose their ability to exercise quality control over products bearing their trademark. This conduct is alleged to have damaged the goodwill of Miller's trademark and allowed Anthony to earn profits to which they were not entitled. This conduct is said to have resulted in the breach of the distributor agreements, including financial losses and damage to Miller's trademark and goodwill associated with that registered mark.

### STANDARD OF REVIEW

In reviewing a motion to dismiss, the court is required to view the complaint in the light most favorable to the plaintiff, or counter-plaintiff as here, and accept all allegations of the claim as true. *Colodny v. Iverson, Yoakum, Papiano & Hatch,* 838 F.Supp. 572 (M.D.Fla.1993) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Such a motion should be granted only where the complaining party can prove no set of facts upon which relief could be granted. *National Organization for Women v. Scheidler,* —— U.S. ——, ——, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 72, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

In reviewing a motion to dismiss, this Court accepts all of the well-pled allegations of Counts II, IV, V, VI and VII (In Part) of the Amended Counterclaim as true. The scope of review concerns the allegations contained within the four (4) corners of the Amended Counterclaim. Review of matters outside of the allegations of the Amended Counterclaim are not proper considerations in ruling on a motion to dismiss.

### COUNT II: FRAUD AND COUNT VII: DECLARATORY RELIEF (IN PART)

■ In examining the Count II fraud claim, the Court applies Rule 9(b), Fed. R.Civ.P. Rule 9(b) specifies that in all averments of fraud, the circumstances constituting fraud shall be stated with particularity. While it is true that Miller includes the individuals and a time period, the count still lacks the specificity required under Rule 9(b). Count II must explicitly state the circumstances constituting the fraud; it does not.

Miller should specifically identify the individuals who made the alleged misrepresentations, the time of the alleged fraud and the place of the alleged fraud. *Todd v. Oppenheimer & Co., Inc.,* 78 F.R.D. 415 (S.D.N.Y. 1978). In addition to dates, times, and names, Miller should also quote or paraphrase the alleged fraudulent misrepresentations made by Anthony. *O'Rear v. American Family Life Assurance Co.,* 139 F.R.D. 418, 420 (M.D.Fla.1991). The reason for requiring greater specificity in cases alleging

fraud is because there is a higher chance of causing injury to a party's reputation. *Rent-club, Inc. v. Transamerica Rental Finance Corporation,* 775 F.Supp. 1460, 1462 (M.D.Fla.1991).

■ The Court recognizes that if the alleged fraud occurred over an extended period of time and the acts are numerous, the specificity requirements are less stringently applied. *In re Sunrise Securities Litigation,* 793 F.Supp. 1306, 1312 (E.D.Pa.1992); *Onesti v. Thomson McKinnon Sec., Inc.,* 619 F.Supp. 1262, 1265 (N.D.Ill.1985). However, this does not negate Miller's duty to adequately plead the contents of the alleged fraudulent representations and the places where the activity is to have occurred.

Miller has sufficiently alleged the period of time over which the alleged fraudulent acts are to have occurred and the identity of the individuals who are to have made the fraudulent misrepresentations. *See* Counterclaim paragraph 14.

However, Miller has merely alleged that the fraud took place in retail accounts, allowing overage products to reach consumers. There is no indication of the location of the retail accounts in which the alleged fraud is to have taken place, except for a general allegation that the acts occurred in the Tampa and St. Petersburg markets. *See* Counterclaim, paragraph 14. Miller pled the acts resulted in the overage products remaining in retail accounts and reaching consumers; however, none of the retail accounts or consumers were identified. *See* Counterclaim paragraphs 13–15 and 22.

Miller has failed to plead, even under the less stringently applied standards, the locations at which the alleged fraud is to have occurred. Therefore, Miller has failed to plead with the requisite specificity the fraud alleged in Count II. Anthony's Motion to Dismiss as to Count II is granted with ten (10) days leave to amend.

Additionally, Anthony claims Count VII, for declaratory relief, likewise fails for not pleading fraud with the requisite particularity, insofar as Count VII relies on the fraud alleged in Count II. For the same reasons as stated above, Anthony's Motion to Dismiss

Count VII (In Part) is granted with ten (10) days leave to amend the allegations concerning fraud to specify the places where the alleged fraud is to have taken place, including the retail accounts where this conduct is to have occurred.

■ Anthony also seeks to dismiss Count II based on the economic loss doctrine. The "economic loss rule" was adopted and refined in Florida through the series of state and federal court cases including *Florida Power & Light Co. v. Westinghouse Electric Corp.,* 510 So.2d 899 (Fla.1987), holding that tort actions for purely economic damages cannot lie without accompanying injury or property damage.

■ Where the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action. *Serina v. Albertson's Inc.,* 744 F.Supp. 1113 (M.D.Fla.1990). An action in tort is inappropriate where the basis of the suit is contract, either express or implied. *Belford Trucking Co. v. Zagar,* 243 So.2d 646 (Fla. 4th DCA 1970).

■ If property damage has been alleged, such as damage to the trademark of Miller, the economic loss rule does not bar an action for an independent tort flowing from the contractual breach. *AFM Corp. v. Southern Bell Tel. & Tel. Co.,* 515 So.2d 180 (Fla.1987).

■ Here the damages flowing from the alleged fraud include damage to the trademark of Miller, specifically damage to the goodwill of Miller's trademark. *See* Counterclaim paragraphs 6 and 23. Miller's trademark is an intangible asset of the corporation representing the corporation's reputation and goodwill. *NLC, Inc. v. LENCO Electronics, Inc.,* 798 F.Supp. 1419, 1423 (E.D.Mo.1992). As such, the trademark is the property of the corporation which can be independently bought or sold. Damage to Miller's property is alleged to have caused damage distinct from the damages flowing from the contractual breach. Consequently, the economic loss rule does not bar the action for fraud as

alleged in Count II and the motion to dismiss is on that basis denied.

### COUNTS V AND VI: FEDERAL TRADEMARK INFRINGEMENT

Counter–Defendants' allege that Counts V and VI should be dismissed because of their status as "authorized distributors" and the availability of contractual remedies. It is alleged, however, that Counter–Plaintiff's quality control standards have been violated and such violation constitutes trademark infringement.

■ Trademark law does not apply to the sale of genuine products bearing the true mark of the registrant. *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir.1991). A product is not genuine unless it is manufactured and distributed under the quality controls established by the manufacturer. *Id.*

■ In this case, trademark law is applicable as the beer distributed by Anthony is not "genuine." It is alleged that Anthony has distributed Miller's product in violation of its quality control standards, and as such Miller may sustain an action for trademark infringement.

■ One purpose of trademark registration is to serve as a quality assurance mechanism, as the trademark is usually associated with the quality of the product it symbolizes. *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F.Supp. 131, 135 (D.Colo. 1980) (citing *Avrick v. Rockmont Envelope Co.*, 155 F.2d 568, 571–571 (10th Cir.1946)). Failing to maintain the quality control standards established by the trademark owner, in selling the products to consumers, may violate the owner's trademark. *Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 62 (2d Cir.1992) (citing *Shell Oil*, 928 F.2d 104, 107 (4th Cir.1991)); *El Greco Leather Products Co. v. Shoe World, Inc.*, 806 F.2d 392 (2d Cir.1986). Such a failure may constitute infringement upon the owner's trademark under both 15 U.S.C. §§ 1114(1) and 1125(a). Both federal statutes require confusion and deceit to the public involving products bearing the owner's registered trademark. *El Greco*, 806 F.2d 392, 395 (2d Cir.1986);

*Adolph*, 486 F.Supp. 131, 135–36 (D.Colo. 1980). The trademark owner may be entitled to cumulative damages resulting from the infringement in addition to damages flowing from a breach of contract. *Babbit Electronics, Inc. v. Dynascan Corporation*, 38 F.3d 1161, 1183 (11th Cir.1994).

It is clear that the distribution of a trademark owner's product while violating the owner's quality control standards may constitute trademark infringement. *Adolph*, 486 F.Supp. 131 (D.Colo.1980) (trademark infringement from the distribution of beer not meeting owner's quality control standards.) Even though *Adolph* does not involve an "authorized user," there is nothing in the Lanham Act to suggest Anthony should be immunized from trademark infringement merely because of their status. In fact, 15 U.S.C. § 1114(1) specifically states, in part:

> Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale ... of any goods or services on or in connection with which such use is likely to cause confusion ... shall be liable in a civil action by the registrant....

15 U.S.C. § 1114(1).

Anthony clearly does not have the consent of the registrant to sell a product which does not adhere to the quality control standards of the trademark owner. Additionally, it is important to note that the Lanham Act has not been strictly construed to require literal reproduction, counterfeit, copy or colorable imitation. *Adolph*, 486 F.Supp. 131, 135 (D.Colo.1980). The Act has been liberally construed to prevent misappropriation of the goodwill of the trademark which will likely adversely influence the trademark owner and the public. *Id.*

This Court finds no merit in Counter–Defendants' argument that because of their status as "authorized distributors," they may not be trademark infringers. In viewing the counterclaim in the light most favorable to the non-moving party, as this Court must, we find no limitation, because of the Counter–Defendants' status or the availability of con-

tractual remedies, on Counter–Plaintiff alleging trademark infringement. Counter–Defendants' Motion to Dismiss Counts IV and V is hereby denied.

### COUNT VI: UNJUST ENRICHMENT

 The essential elements for an unjust enrichment claim, under Florida law are: (1) a benefit conferred on plaintiff and plaintiff's knowledge thereof; (2) plaintiff voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for plaintiff to retain the benefit without paying the value thereof. *Hercules, Inc. v. Pages,* 814 F.Supp. 79, 80 (M.D.Fla.1993).

There is absolutely no requirement, as alleged by Anthony, that profits obtained by Anthony be diverted from Miller. Miller has sufficiently alleged each of these essential elements for an unjust enrichment cause of action in their Counterclaim, and does withstand a motion to dismiss.

Anthony also seek to dismiss Count VI because of the economic loss doctrine. As previously explained in Count II above, there must be damages distinct from the damages resulting from the alleged breach of contract in order to not be barred by the economic loss doctrine. *Serina v. Albertson's Inc.,* 744 F.Supp. 1113 (M.D.Fla.1990).

The damages alleged by Miller are economic damages directly flowing from the alleged breach of contract by Anthony. Miller does not allege damages to the goodwill of its trademark, a property of the corporation. The economic loss doctrine does bar Miller's claim under Count VI as the cause of action for both breach of contract in Count I and unjust enrichment in Count IV arise from the same purported agreement, same breach, and result in the same economic damages.

Because Count VI is barred by the economic loss doctrine, it is unnecessary for this Court to address Anthony's additional grounds for dismissal for failure to state a cause of action. Consequently, Anthony's Motion to Dismiss Count VI is granted on the grounds that the cause of action alleged for unjust enrichment is barred by the economic loss doctrine. Accordingly it is

**ORDERED** that Plaintiffs'/Counter–Defendants' Motion to Dismiss (Docket No. 70) be **GRANTED** in part and **DENIED** in part, in that Count VI is **DISMISSED** with prejudice; Counts II and VII (as set forth above) be dismissed with leave to amend and Defendant/Counter–Plaintiffs shall have ten (10) days from this date to amend Counts II and VII (In Part) to comply with the specificity requirements of pleading fraud under Federal Rule of Civil Procedure 9(b). Failure to amend Counts II and VII (In Part), within the designated time period, will result in those counts being dismissed, with prejudice, from the cause of action.

**DONE AND ORDERED.**