**BILL BUCK CHEVROLET, INC., a Florida corporation, and All Those Similarly Situated, Plaintiff,**

v.

**GTE FLORIDA, INC., Defendant.**

No. 99–23–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

June 22, 1999.

Robert Cyril Widman, Morris & Widman, P.A., Venice, FL, Herbert Tobias Schwartz, Williams Bailey Law Firm, L.L.P., Houston, TX, for Bill Buck Chevro-

let, Inc., a Florida corporation, and all those similarly situated, plaintiff.

James Maxwell Landis, Foley & Lardner, Tampa, FL, Michael P. Kenny, Peter Kontio, Valarie C. Williams, Alston & Bird, Atlanta, GA, for GTE Florida, Inc., defendant.

## ORDER

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following:

1. Defendant's motion for a stay of proceedings pending the entry of a case management order and supporting memorandum (Docket Nos. 10–11), and Plaintiff's response (Docket No 14);

2. Plaintiff's motion for class certification and supporting memorandum (Docket Nos. 15–16), and Defendant's response (Docket No. 21); and

3. Defendant's motion to dismiss and supporting memorandum (Docket Nos. 19–20), and Plaintiff's response (Docket No. 24).

## BACKGROUND

I. Facts

The facts as stated are taken from Plaintiffs complaint (Docket No. 1). Plaintiff BILL BUCK CHEVROLET, INC., is a corporation. Defendant GTE FLORIDA, INC. is a local exchange carrier [hereinafter "LEC"] of telephone service. Plaintiff receives its telephone service from Defendant.

Plaintiff alleges that Defendant and other LECs have participated in what is known as "cramming" by allowing fraudulent charges to appear on telephone bills. The complaint defines "cramming" as "the practice of initiating unauthorized, misleading, or deceptive charges for a variety of services that appear on the telephone bills of end-users (the person to whom local telephone service is provided)." Pl. Compl. ¶ 22. These charges originate with service providers who offer services such as music-on-hold, transaction processing, alarm monitoring, voice messaging, and data processing, among others. The service providers forward charges for these services to entities known as bill aggregators. A bill aggregator is in the nature of a clearinghouse, and it separates the charges by LEC and transmits them to the LEC. The LEC prints the charges on the end user's telephone bill.

The LEC typically remits the billed amounts to the bill aggregators and the service providers within thirty days regardless of whether the end user has paid the telephone bill by that time. Plaintiff alleges that by doing so, the LEC effectively finances the operations of the service providers and bill aggregators. Plaintiff further alleges that, by furnishing a billing vehicle for the service providers, the LECs have facilitated the service providers' unlawful conduct. Defendant and other LECs typically retain four to five percent of the amount billed by the service provider. Plaintiff also alleges that because LECs retain a portion of the amounts billed by service providers, they have a financial interest in maximizing the amounts for which service providers bill customers.

Plaintiff alleges that Defendant has included charges on Plaintiff's telephone bills that Defendant knew or should have known were fraudulent. Plaintiff alleges that Defendant and other LECs have purposefully failed to develop or implement safeguards to insure the integrity of their telephone bills or prevent fraudulent charges being presented to end users for payment. They have failed to scrutinize bill aggregators and service providers for reliability and integrity. Defendant and other LECs have joined in the unlawful conduct of the bill aggregators and service providers in order to share in the revenues the conduct generates.

Plaintiff further alleges that Defendant and other LECs are aware of and ignore fraudulent practices that service providers use to obtain the names and telephone numbers of end users in order to post charges on end users' accounts. Among these fraudulent practices are conducting fictitious sweepstakes; asking deceptive questions intended to evoke a "yes" response, and splicing that answer onto a tape asking whether the end user wishes to purchase the service provider's product; and using an automatic number identifier to discover an end-user's phone number and placing unauthorized services on that number.

Plaintiff alleges that the acts of Defendant and other LECs are violations of the Racketeer Influenced Corrupt Organization Act [hereinafter "RICO"], 18 U.S.C. § 1961 *et seq.* Plaintiff alleges that Defendant and other LECs, in conjunction with the service providers and bill aggregators, operate throughout the United States and carry on their unlawful enterprise by using the instrumentalities of interstate commerce through interstate telephones, facsimiles, and Internet facilities.

As predicate acts, Plaintiff alleges that each transmission of fraudulent charges constitutes an act of mail fraud, in violation of 18 U.S.C. Section 1341, and, to the extent that data was also transmitted by telephone or the Internet, wire fraud in violation of 18 U.S.C. Section 1343. Plaintiff also alleges that the mailing of telephone bills containing fraudulent charges to end users is a separate act of mail fraud in violation of Section 1341. The repeated accumulation and transmission of the fraudulent service provider charges and transmission of telephone bills containing fraudulent service provider charges constitutes a pattern of conduct separate from the enterprise being conducted by agents of the enterprise. This pattern is carried on through racketeering. Plaintiff alleges that the Defendant and the other LECs' fraudulent schemes had a deleterious ef-

fect on Plaintiff and other end users by causing them to lose money.

## II. Statutory Framework

As the Supreme Court has described it, "RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). "Organized crime was without a doubt Congress' major target." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 245, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In practice, however, RICO has "evolv[ed] into something quite different from the original conception of its enactors." *Sedima*, 473 U.S. at 500, 105 S.Ct. 3275. "Instead of being used against mobsters and organized criminals, it has become a tool for everyday fraud cases." *Id.* at 499, 105 S.Ct. 3275. Nonetheless, the Supreme Court has specifically declined to reverse that trend. *See, e.g., H.J.*, 492 U.S. at 244–49, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Sedima*, 473 U.S. at 497–500, 105 S.Ct. 3275. Instead, it has stated that:

> Congress realized that the stereotypical view of organized crime as consisting in a circumscribed set of illegal activities, such as gambling and prostitution ... was no longer satisfactory because criminal activity had expanded into legitimate enterprises. Title 18 U.S.C. § 1961(1) (1982 ed., Supp. V), with its very generous definition of "racketeering activity," acknowledges the breakdown of the traditional conception of organized crime, and responds to a new situation in which persons engaged in long-term criminal activity often operate wholly within legitimate enterprises. Congress drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways.

*H.J.*, 492 U.S. at 248, 109 S.Ct. 2893 (citation omitted).

RICO makes unlawful the following activities: (1) investing income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in any enterprise which affects interstate commerce, 18 U.S.C. § 1962(a); (2) acquiring or maintaining an interest in any enterprise which affects interstate commerce through a pattern of racketeering activity or through collection of an unlawful debt, 18 U.S.C. § 1962(b); (3) conducting or participating in the affairs of any enterprise which affects interstate commerce through a pattern of racketeering activity or collection of unlawful debt, 18 U.S.C. § 1962(c); and (4) conspiring to violate any of the provisions of subsections Section 1962(a), (b), or (c). 18 U.S.C. § 1962(d).

As defined by RICO, "racketeering activity" covers a wide range of federal and state crimes, including: any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical, 18 U.S.C. § 1961(1)(A); bribery, counterfeiting, mail fraud, wire fraud, financial institution fraud, obstruction of justice, tampering with or retaliating against a witness, victim, or informant, money laundering, sexual exploitation of children, interstate transportation of stolen motor vehicles or stolen property, or trafficking in contraband cigarettes, 18 U.S.C. § 1961(1)(B); improper payments or loans to unions or embezzlement from union funds, 18 U.S.C. § 1961(1)(C); fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance, 18 U.S.C. § 1961(1)(D); any act which is indictable under the Currency and Foreign Transactions Reporting Act, 18 U.S.C. § 1961(1)(E); or any act which is indictable under the Immigration and Nationality Act, if the act was committed for the purpose of financial gain, 18 U.S.C. § 1961(1)(F).

A " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of [RICO] and the last of which occurred within ten years (excluding any term of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The term " 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1861(4).

RICO establishes both criminal penalties, *see* 18 U.S.C. § 1963 and civil remedies, *see* 18 U.S.C. § 1964, for violations of Section 1962. The civil remedies provision provides a private cause of action in federal district court for "any person injured in his business or property by reason of a violation of section 1962." § 1961(c). The injured party may recover damages in three times the amount caused by the RICO violation, as well as costs. *Id.*

## ANALYSIS

### I. Motion to Dismiss (Docket No. 19)

#### A. Failure to State a Claim

Defendant moves for dismissal on the ground that Plaintiff fails to state a RICO claim. Plaintiff's complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that Plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must also accept the Plaintiff's well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, to survive a motion to dismiss, a plaintiff may not merely "label" claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Fed-

eral Rules of Civil Procedure require "a short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed. R.Civ.P. 8(a)(2)). "Claims under RICO must be subjected to scrutiny due to their potential for abuse by civil litigants." *Ste Ame Isorait v. Atlantic Mut. Co.,* 1993 WL 37330, at *3 (E.D.N.Y.1993).

■ The elements of a civil RICO claim are: "(1) a violation of section 1962; (2) injury to business or property; and (3) that the violation caused the injury." *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991); *O'Malley v. O'Neill,* 887 F.2d 1557, 1561 (11th Cir.1989). For the reasons discussed below, Plaintiff's complaint fails to establish any of these three elements.

### 1. Violation of Section 1962

Defendant argues, based on *Reynolds v. East Dyer Development Co.,* 882 F.2d 1249, 1251 (7th Cir.1989), that Plaintiff's failure to specify which of the four provisions of Section 1962 Defendant allegedly violated is fatal to Plaintiff's claim. Defendant's argument has some support. As one court explained:

> The essence of a RICO violation is a defendant's conduct in relation to an enterprise. 18 U.S.C. § 1962(a) makes it unlawful to invest income derived from a pattern of racketeering in an enterprise. Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity. And Section 1962(c) makes it unlawful to conduct or participate in an enterprise's affairs through a pattern of racketeering activity. Moreover, the different RICO sections require plaintiffs to prove different things. For example, under § 1962(c), the plaintiff must show that the enterprise and the defendant are different entities; under § 1962(a), however, the defendant may be the enterprise. Thus, it is essential to plead precisely in a RICO case the enterprise alleged and the RICO section allegedly violated.

*Reynolds v. East Dyer Development Co.,* 882 F.2d 1249, 1251 (7th Cir.1989) (citations omitted).

Plaintiff argues that violations of both Section 1962(b) and Section 1962(c) can be inferred from the allegations in its complaint. This Court need not decide in the instant case whether the failure to specify in the complaint under which provision or provisions Plaintiff proceeds is fatal to Plaintiff's claim, because Plaintiff fails to make allegations establishing a violation of either Section 1962(b) or Section 1962(c). To state a claim under either subsection suggested by Plaintiff, a plaintiff must allege facts demonstrating that the defendant engaged in a pattern of racketeering activity and that an enterprise existed. The allegations in Plaintiff's complaint do not satisfy these requirements.

### a. Racketeering Activities

■ Defendant argues that Plaintiff fails to establish that Defendant committed any predicate acts, that is any acts identified in RICO as "racketeering activities," because it failed to allege facts showing scienter on the part of the Defendant, as is necessary for a claim of mail or wire fraud. "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Pelletier v. Zweifel,* 921 F.2d 1465, 1498 (11th Cir.1991). This requires a showing "that the defendant held the requisite mens rea .... a 'conscious knowing intent to defraud.'" *Id.* at 1499 (quoting *United States v. Kreimer,* 609 F.2d 126, 128 (5th Cir.1980)).

■ A RICO plaintiff "need not produce direct proof of scienter." *United States v. Suba,* 132 F.3d 662, 673 (11th Cir.1998). However, a recent Eleventh Circuit case held that "[a] RICO plaintiff's allegations of scienter cannot be 'merely conclusory

and unsupported by any factual allegations.'" *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 949 (11th Cir. 1997) (quoting *O'Malley*, 887 F.2d at 1560). Plaintiff relies on language in *Beck v. Manufacturers Hanover Trust*, 820 F.2d 46 (2d Cir.1987), to support its argument that the factual allegations of the complaint are sufficient. The *Beck* court stated that "[a] common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so." *Id.* at 50. Plaintiff points to allegations in its complaint that Defendant retains four to five percent of service provider charges as evidence that Defendant had a financial incentive to commit fraud.

The *BCCI* case, however, is more directly parallel to the facts of this case, and is binding on this Court. It does not support Plaintiff's argument. In *BCCI*, the Republic of Panama sued numerous defendants pursuant to RICO for their alleged actions furthering General Manuel Noriega's illegal diversion of state funds for his personal use. *See id.* at 939. Panama alleged that one set of defendants, referred to by the court as the First American defendants, had been a conduit through which the stolen funds were transferred. *Id.* However, the Eleventh Circuit noted, the plaintiff had made no allegation that the First American defendants "knew of either the source of the funds or their ultimate beneficiary," or knew that the funds "were derived from unlawful activity." *Id.* at 950. The Eleventh Circuit held that these allegations were insufficient to state a RICO claim because they did not "give rise to a strong inference [the defendant] possessed the requisite factual intent." *Id.* (quoting *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987)).

■ Like the allegations at issue in *BCCI*, the allegations in Plaintiff's complaint do not give rise to a strong inference that Defendant possessed the specific intent necessary for mail or wire fraud. Taken in the light most favorable to the Plaintiff, the allegations in the complaint establish at most the Defendant knew or should have known that some service providers engage in "cramming," and that, through bill aggregators, Defendant allowed service providers to place charges on the telephone bills of its customers. Plaintiff does not allege that Defendant knew that any particular service provider engaged in cramming, or that Defendant knew that any particular charges on Plaintiff's bill were fraudulent. As was the case in *BCCI*, the essence of Plaintiff's allegations is that Defendant provided a service that another party used to further its own criminal ends.

In the absence of allegations demonstrating that Defendant had the scienter necessary to commit mail or wire fraud, Plaintiff has not stated a RICO claim. Moreover, allowing Plaintiffs to establish the scienter necessary to support a RICO claim solely by an allegation that Defendant stood to make a profit by providing a service of which others took advantage for their own criminal ends would result in an expansion of RICO far beyond the intent of Congress or any reasonable interpretation of the caselaw construing the statute. If courts were to adopt the proposition Plaintiff urges this Court to adopt, credit card companies could be sued under RICO for billing customers for purchases that an unauthorized user made on the card, even if the credit card company was unaware that the charges were fraudulent. Just as Plaintiff alleges Defendant was aware that some service provider charges are fraudulent, and makes a profit on each service provider charge, credit card companies are aware that some charges made are fraudulent, and make a profit on each credit card transaction. Congress intended RICO to apply to "persons engaged in long term criminal activity ... within legitimate enterprises." *H.J.*, 492 U.S. at 248, 109 S.Ct. 2893. There is nothing in the text of RICO or its legislative history indicating that Congress intended to impose such liability on legitimate enterprises merely

because another party has exploited that legitimate enterprise as a means to defraud consumers.

This is not to say that telephone or credit card customers who have been wrongfully billed or charged due to a third party's fraud are without a remedy. If a service provider knowingly causes a telephone customer to be billed for services that the customer did not request, the customer may have a cause of action against that service provider, possibly including a RICO claim. Plaintiff may even have a cause of action against Defendant. Plaintiff does not specify whether it paid any fraudulent telephone charges, whether it brought any charges for which it was wrongfully billed to the attention of Defendant, or whether Defendant offers any recourse to customers who are billed for services they did not request. However, if Defendant offers no such recourse to customers who are fraudulently charged, Plaintiff may have remedies available through federal or state agencies, or causes of action available in federal or state court.

Thus, Plaintiff may have a remedy for any damages it suffered as a result of "cramming," but that remedy is not a RICO claim against Defendant. Plaintiff has made no allegations giving rise to a "strong inference" that Defendant possessed the intent to defraud, as Eleventh Circuit law requires to support a RICO claim based on mail or wire fraud.

b. Pattern

 The allegations of Plaintiff's complaint are sufficient to demonstrate pattern. To fulfill this requirement, a RICO plaintiff must "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J.*, 492 U.S. at at 239, 109 S.Ct. 2893. The continuity aspect of this test is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. 2893. "[T]he threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* at 243, 109 S.Ct. 2893. While Plaintiff has not demonstrated that the placement of allegedly fraudulent service provider charges on Plaintiff's telephone bill constituted mail fraud, Plaintiff has alleged facts sufficient for the Court to infer that, as a part of its regular way of doing business, Defendant places service provider charges, some portion of which are fraudulent, on its customers' telephone bills. Thus, Plaintiff's complaint meets the pattern requirement.

c. Enterprise

 Defendant argues that the allegations of Plaintiff's complaint are insufficient to demonstrate the existence of an enterprise. Plaintiff argues that the allegations of the complaint establish the existence of an association in fact among Defendant, service providers, and bill aggregators. The Supreme Court has stated that "enterprise" includes "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). "RICO reaches any group of individuals 'whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes.'" *United States v. Cagnina*, 697 F.2d 915, 921 (11th Cir.1983) (quoting *United States v. Elliott*, 571 F.2d 880, 898 (5th Cir.1978)). The existence of an enterprise may be demonstrated "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524.

Defendant argues that Plaintiff's complaint is so vague with respect to the components of the alleged enterprise that it is impossible to determine whether Plaintiff

alleges an enterprise satisfying the requirements of RICO. The "existence of an enterprise consisting of an association with a common purpose and continuity of structure, distinct from the pattern of racketeering in which it allegedly has been engaged, must be alleged." *Marshall v. Atlanta,* 195 B.R. 156, 168 (N.D.Ga.1996). In *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640 (7th Cir.1995), the court considered whether a complaint that identified the members of the enterprise only in general terms, similar to those used by the Plaintiff here, sufficiently pled the existence of an enterprise. The court stated that a "nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of a RICO offense." *Id.* at 645. It held that allegations that were so vague that they did not identify the other participants in the alleged enterprise failed to satisfy the notice requirement of Federal Rule of Civil Procedure 8.

Like the complaint at issue in *Richmond,* Plaintiff's complaint identifies the other members of the alleged enterprise only in vague terms. While it refers to them as "service providers" and "bill aggregators," it never identifies any particular service provider or bill aggregator as having a business relationship with Defendant, much less as having engaged in "cramming" in the context of that business relationship. The presence of an ·enterprise is an essential element of a RICO complaint; merely identifying the type of business in which the members of the alleged enterprise engage is not enough either to allow the Court to evaluate whether the alleged enterprise constitutes an enterprise within the meaning of RICO, or to provide Defendant fair notice of the claim against which it must defend.

### 2. Causation of Injury

■ Additionally, Plaintiff's complaint does not allege facts showing that it was harmed by the Section 1962 violation alleged. "In addition to proving racketeer-

ing activity, a civil RICO plaintiff must show that the racketeering activity caused him to suffer an injury." *Beck v. Prupis,* 162 F.3d 1090, 1095 (11th Cir.1998). Plaintiff must show that the violation "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). "When the alleged predicate act is mail or wire fraud, the plaintiff ... must have relied to his detriment on misrepresentations made in furtherance of that scheme." *Pelletier,* 921 F.2d at 1499–1500. Plaintiff makes no allegations that it paid, or in any other way relied on, any fraudulent charges. Plaintiff's complaint therefore fails to establish that the alleged pattern of racketeering caused it injury.

In sum, Plaintiff's complaint fails to establish that Defendant engaged in racketeering activities, because it does not allege facts demonstrating the requisite scienter on the part of Defendant for mail or wire fraud, the predicate acts on which it relies. The complaint's description of the alleged enterprise is overly vague, and does not allow the Court to evaluate whether the alleged enterprise meets the legal standard necessary to establish a RICO enterprise, or the Defendant to defend against Plaintiff's claim. Finally, the allegations in the complaint do not establish that Plaintiff relied on the alleged fraud or that it caused Plaintiff any injury. Plaintiff's complaint will therefore be dismissed.

### B. Failure to Plead with Particularity

■ Defendant moves for dismissal on a second ground, Plaintiff's failure to plead mail or wire fraud with particularity, as required under Federal Rule of Civil Procedure 9(b). Plaintiff's failure to state a claim is alone sufficient to require this Court to grant Defendant's motion to dismiss. Because Plaintiff will be granted leave to amend, the Court will briefly ad-

dress the pleading requirements for mail or wire fraud.

■ Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Pleading fraud with particularity is necessary in order to: (1) provide defendants with sufficient notice of the acts of which the plaintiff complains to enable them to frame a response, (2) prevent fishing expeditions to uncover unknown moral wrongs, and (3) protect defendants from unfounded accusations of immoral and otherwise wrongful conduct. *NCR Credit Corp. v. Reptron Electronics, Inc.*, 155 F.R.D. 690, 692 (M.D.Fla.1994).

■ As this Court has stated previously, "pleading a predicate act with specificity requires a complaint to answer the familiar questions of 'who, where, when, how, and why.'" *Florida Software Systems, Inc. v. Columbia/HCA*, 46 F.Supp.2d 1276, 1277 (M.D.Fla.1999). Put another way: Rule 9(b) may be satisfied if the complaint sets forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants "obtained as a consequence of the fraud."

*Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380 (11th Cir.1997) (adopting order of district court) (quoting *Fitch v. Radnor Industries, Ltd.*, 1990 WL 150110, at *2 (E.D.Penn. Sept. 27, 1990)). Nevertheless, courts recognize that if the alleged fraud occurred over an extended period of time and the acts were numerous, the specificity requirements are less stringently applied. *Anthony Distrib-*

*utors, Inc. v. Miller Brewing Co.*, 904 F.Supp. 1363, 1366 (M.D.Fla.1995). This relaxed requirement is applied where "strict application of Rule 9(b) could result in substantial unfairness to private litigants who could not possibly have detailed knowledge of all the circumstances surrounding the alleged fraud." *NCR Credit*, 155 F.R.D. at 692. This does not negate the plaintiff's duty to adequately plead the contents of the alleged fraudulent representations and the places where the activity was to have occurred, however. *Anthony Distributors*, 904 F.Supp. at 1366.

In this case, Plaintiff's complaint fails to meet even the relaxed pleading requirements identified in *Anthony* and *NCR Credit*. Plaintiff's complaint is not sufficiently detailed to make Defendant aware which of the charges on its bill Plaintiff is alleging to have been fraudulent, the dates of the telephone bills on which the allegedly fraudulent charges appeared, or whether Plaintiff paid the allegedly fraudulent charges. Should Plaintiff choose to file an amended complaint, each of these deficiencies should be corrected.

## II. Motion for Class Certification (Docket No. 15)

■ Because Plaintiff's complaint fails to state a claim, the Court will defer consideration of Plaintiff's motion for class certification. Postponing consideration of class certification:

is the proper course to follow where the named plaintiffs have failed to state a claim in themselves for the relief they seek. Until they can show themselves aggrieved in the sense that they are entitled to the relief sought, there is no occasion for the court to wrestle with the problems presented in considering whether the action may be maintained on behalf of the class. Until a claim on their own behalf is alleged by the named plaintiffs they have failed to allege an actual case or controversy.

Such is the holding in *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (Jan. 15, 1974), where the Court stated:

> If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.

414 U.S. at 494, 94 S.Ct. at 675.

*Boyle v. Madigan,* 492 F.2d 1180, 1182 (9th Cir.1974); *see also, Lynch v. Baxley,* 744 F.2d 1452, 1456 (11th Cir.1984) (stating that "[i]ndividual standing requirements must be met by anyone attempting to represent his own interest or those of a class.")

III. Motion for a Stay (Docket No. 10)

Defendant moves for a stay of proceedings pending a Federal Rule of Civil Procedure 16 scheduling conference and the entry of a case management and scheduling order. Defendant seeks a stay in order to avoid class discovery and class certification proceedings until dispositive motions have been resolved. The only outstanding dispositive motion in this case has now been resolved, and in any event, the Rule 16 conference is upcoming. Defendant's motion will therefore be denied. Accordingly, it is

**ORDERED** that:

1. Defendant's motion for a stay of proceedings (Docket No. 10) be **DENIED;**

2. Plaintiff's motion for class certification and supporting memorandum be **DEFERRED;** and

3. Defendant's motion to dismiss (Docket No. 19), be **GRANTED;** and Plaintiff shall have ten (10) days from the date of this Order to amend the Complaint. .