**GENERAL ELECTRIC COMPANY, et al., Plaintiffs,**

v.

**LATIN AMERICAN IMPORTS, S.A., d/b/a Latam, et al., Defendants.**

No. CIV.A.99–92.

United States District Court,
W.D. Kentucky,
Louisville Division.

Aug. 10, 2001.

### *ORDER*

COFFMAN, District Judge.

This matter is before the court upon the motion (Record No. 28) by the counterclaim defendants (GE, et al.) for partial dismissal and the motion (Record No. 44) by the counterclaim plaintiffs (LATAM, et al.) to strike new arguments made by the counterclaim defendants in their reply to the motion for partial dismissal or, alternatively, for leave to file a surreply. The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion for partial dismissal in part, deny it in part, and deny the motion to strike or file a surreply.

Under Federal Rule of Civil Procedure 12(b)(6), granting a motion to dismiss is inappropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Further, in considering a motion to dismiss, "all allegations in the complaint are taken as true and the complaint is construed liberally in favor of the party opposing the motion to dismiss." *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). As there is a dispute over choice of law in this case, the court will first address the parties' arguments regarding claims conceded to be governed by federal law.

### *Federal Law Arguments*

Counts 6 and 7

The counterclaim defendants make two primary arguments regarding dismissal of the counterclaim plaintiffs' Sherman Act claims, Count 6 (Attempt to Monopo-

lize) and Count 7 (Conspiracy to Price–Fix). The first is that this court lacks subject-matter jurisdiction over the antitrust claims because the counterclaim plaintiffs' amended complaint fails to meet the requirements of the Foreign Trade Antitrust Improvements Act ("FTAIA"), which sets forth the conditions under which the Sherman Act relates to conduct involving trade or commerce with foreign nations. Initially, GE argues that LATAM has failed to allege adequately that it is within the class of persons engaged in export trade or commerce in the United States, a necessary prerequisite to bringing suit for antitrust violations involving export trade. Specifically, GE challenges the LATAM complaint's assertion that it was engaged in U.S. export trade by virtue of the fact that GE delivered products to LATAM (during its distributorship) "FOB factory" (in Louisville), which caused LATAM to bear the risk and cost of inland shipment of the product to Peru; GE characterizes this arrangement as merely establishing LATAM as a foreign importer who made shipping arrangements within the United States. LATAM counters that it essentially bought U.S.-branded household appliances in Kentucky and exported them to Peru, and that it thus engaged in export trade and commerce in and from the U.S.

The law cited by the parties does not clarify precisely what it means to be engaged in export trade or commerce in the United States. *The 'In' Porters, S.A., v. Hanes Printables, Inc.,* 663 F.Supp. 494 (M.D.N.C.1987), a case cited by both parties, discusses the necessity of a foreign company alleging that it is within the class of U.S. exporters, but does not delineate how, or if, such a company may so allege; in short, *Porters* does not speak to the issue of whether LATAM is rendered an exporter by virtue of its shipping arrangements. LATAM also asserts that its status as a U.S. exporter is bolstered by (1) its responsibility, under its distribution agreements with GE, of complying with all applicable U.S. export regulations, and (2) testimony by GE's export manager in a previous case before this court that independent distributors (such as LATAM) act as the "exporter of record" from the U.S. The counterclaim defendants did not respond to these arguments in their reply, though they stated that they dispute that LATAM is a U.S. exporter within the meaning of the FTAIA. Given this dearth of both precedent and argument, as well as the fact that LATAM specifically alleged that it is engaged in U.S. export trade in its complaint, the court declines to dismiss Counts 6 and 7 on the ground that the counterclaim plaintiffs are not within the specified class of exporters under the FTAIA.

■ The counterclaim defendants also argue that the complaint fails to allege a direct, substantial and reasonably foreseeable effect on U.S. export trade or export commerce, as required by the FTAIA. LATAM counters that its allegations regarding GE's attempt to destroy a participant in a U.S. export market (namely, LATAM) supplies the requisite effect, citing *Access Telecom, Inc. v. MCI Telecommunications Corp.,* 197 F.3d 694, 712 (5th Cir.1999) ("The substantial effect that [the plaintiff] identifies is that its own business, as well as that of other companies, failed...."). In reply, the counterclaim defendants distinguish *Access Telecom,* where the defendants' alleged conduct resulted in the failure of eighty businesses, and therefore was allegedly aimed at shutting down the market completely. Even when LATAM's allegations are taken as true, GE argues, the export market for U.S.-branded appliances to Peru was not shut down; it remained the same before and after GE's conduct, with the only change being the *identity* of the party who did the exporting. While this argument is attractive, the court must give credence to

LATAM's allegation that it was GE's only potential competition in Peru, and that, had it not been "crippled," as it alleges, it would have formed alliances with other U.S. exporters to compete with GE—in other words, even though GE's actions affected only one business, its conduct *was* aimed at shutting down the market completely. Moreover, LATAM's recently tendered supplemental authorities,[1] *United States v. Time Warner Inc.*, 1997 WL 118413 (D.D.C.1997), and *Coca–Cola Co. v. Omni Pacific Co.*, No. C 98–0784 SI (N.D.Cal. Dec. 9, 1998), appear to lend support to the counterclaim plaintiffs' argument. Thus, for purposes of this motion to dismiss, LATAM has adequately alleged the effect on U.S. export trade required by the FTAIA.

The counterclaim defendants also make a causation argument based on § 6(a)(2) of the FTAIA, which adds the requirement that the direct, substantial, and reasonably foreseeable effect on U.S. export trade must give rise to the plaintiff's claim under the antitrust laws. GE contends that LATAM cannot meet this requirement because the FTAIA "precludes subject matter jurisdiction over claims by foreign plaintiffs against defendants where the situs of the injury is overseas and that injury arises from effects in a non-domestic market." *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 428 (5th Cir.2001). All of LATAM's alleged injuries, argues GE, occurred not in the U.S. market, but in Peru; further, even if GE's conduct had an effect on U.S. export commerce, GE claims that effect did not give rise to LATAM's claims.

It bears noting that no Circuit, prior to *Den Norske*, had interpreted the "gives rise" requirement of the FTAIA. *See Den Norske*, 241 F.3d at 424 n. 13. Further, it is unclear precisely how that ruling impacts this case, particularly in light of the fact that LATAM has alleged a direct, substantial, and reasonably foreseeable effect on a U.S. market—that is, the export market for U.S.—branded appliances to Peru—which, due to the fact that LATAM was GE's only potential competitor in that market, gave rise to LATAM's antitrust claims. LATAM's arguments in its motion to strike noting the distinctions between the Norwegian corporation in *Den Norske*, whose operations were entirely abroad and had no connection to the relevant U.S. export market, appear to be well-founded, and thus the court declines to dismiss Counts 6 and 7 based on the "gives rise" requirement in the FTAIA. As LATAM's

1. A rebuke is in order here. These authorities were submitted in a document entitled "Counter-plaintiffs' Second Notice of Filing Supplemental Authority" (their first "Notice of Filing Supplemental Authority" will be addressed below, as it relates to the arguments based upon Rule 9(b)). This is an improper filing, as proper motion practice under the local rules contemplates only motions, responses, replies and memoranda; the court's inadvertent attention to these "notices" occurred only after careful investigation of the record. This "Notice of Filing Supplemental Authority" is properly construed as a motion for leave to file a surreply, which is routinely denied by this court. Moreover, such a motion, when utilized for the purpose of supplementing argument on pending motions, should be used sparingly and for new, controlling case law—*not* for recently *discovered* case law, nor for arguments which the parties did not think to make in their pleadings. This motion for partial dismissal was filed on January 5, 2001, but the parties have continued to supplement their pleadings with so-called "notices" and related motions, such as the briefs regarding the counterclaim plaintiffs' motion to strike (which will be discussed later in this opinion), for nearly seven months. In the future, the parties in this case will confine themselves to the motion practice contemplated by the local rules—the filing of motions, memoranda, responses, and replies. Any future motions for surreplies (or documents properly construed as such), as well as motions to extend briefing (either page or time limits) will be summarily denied absent extraordinary circumstances.

arguments on this issue in its motion to strike have been considered here, and the court has accorded GE's allegedly "new" arguments in its reply their proper weight, the counterclaim plaintiffs' motion to strike with regard to the antitrust arguments will be denied.

■ The second major argument the counterclaim defendants make with regard to dismissing LATAM's Sherman Act claims is that LATAM has suffered no antitrust injury. This argument further fractures into two components: (1) regarding the nature of the injury, GE contends it is not enough for the counterclaim plaintiffs to assert harm to themselves as an individual competitor; they must assert an "adverse impact on price, quality, or output ... offered to consumers in the relevant market,"[2] and (2) regarding causation, an injury is compensable only when it is the result of the illegal, anticompetitive act; if the plaintiff's injury would have existed in the absence of the antitrust violation, then the plaintiff has not suffered antitrust injury. While these points regarding antitrust standing are correct, GE's application of them to LATAM at this motion-to-dismiss stage is not persuasive, for the same reason the court found that LATAM has pled "direct, substantial, and foreseeable effect" adequately: LATAM's allegation that it was GE's only potential competition in Peru, and that, had it not been "crippled," as it alleges, it would have formed alliances with other U.S. exporters to compete with GE. Thus, Counts 6 and 7 survive the motion to dismiss.

### Counts 1–5

■ The first five counts of the counterclaim plaintiffs' amended complaint, all of which allege fraud, fail the particularity-in-pleading requirements of Rule 9 and therefore must be dismissed, with fifteen days' leave to amend.[3] Counts 1 through 5 allege misrepresentations on the part of GE but plead neither the content of these alleged misrepresentations nor the identities of the parties making and receiving them sufficiently to put GE on notice. The cases cited by the counterclaim plaintiffs, while generally lending support to the sufficiency of LATAM's allegations regarding the time and place of the alleged misrepresentations, are inapposite in that they consider pleadings which are far more detailed and specific than those here. For example, *Michaels Building Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir.1988), involved a fraud count which "specifie[d] the parties and the participants to the alleged fraud, the representations made, the nature in which the alleged statements are alleged to be misleading or false, the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud. In addition, the plaintiffs identified the fraudulent loan documents and attached copies of them to the complaint." *Medalie v. FSC Securities Corp.*, 87 F.Supp.2d 1295, 1307 (S.D.Fla.2000), while stating that exact dates were not required, also involved a complaint that specifically identified the individual making the al-

---

**2.** *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1092 (6th Cir.1996).

**3.** The court takes note of the counterclaim plaintiffs' "Notice of Filing Supplemental Authority," filed on July 18, 2001, which asks the court to consider the November 23, 1999 affidavit of Guillermo Gonzales Neumann in evaluating the counterclaim defendants' Rule 9 challenges to the complaint. The court declines to do so, noting the admonitions above. The counterclaim plaintiffs suffer no prejudice, however, as they have been given leave to amend their complaint. Any further detail provided in the Neumann affidavit can thus be incorporated into the amended complaint.

leged misrepresentations and quoted and paraphrased the material representations made, thus providing the "who, what, where and when" of the fraud alleged. The complaint in *Kozhukh v. Constellation Technology Corp.*, 64 F.Supp.2d 1239, 1243 (M.D.Fla.1999), likewise named individuals. LATAM's assertions that it has clearly pled the circumstances of the fraud and the content of the alleged misrepresentations are unfounded; it is not enough to allege that "GE" affirmed, confirmed and re-confirmed promises of a long-term exclusive relationship, or that "each time reassurance was sought it was provided." *Anthony Distributors, Inc. v. Miller Brewing Co.*, 904 F.Supp. 1363, 1365 (M.D.Fla. 1995), states that the complaint "must explicitly state the circumstances constituting the fraud . . . . should specifically identify the individuals who made the alleged misrepresentations, . . . . [and] should also quote or paraphrase the alleged fraudulent misrepresentations."[4] In sum, the counterclaim plaintiffs must provide more notice to GE regarding the identity of the parties making the alleged misrepresentations and give some specifics as to the content of the statements, beyond the vague allegations of fraud on the part of "GE" which currently appear in the amended complaint.[5]

---

4. While this case correctly notes that specificity requirements are somewhat relaxed when the alleged fraud occurs over an extended period of time, with numerous acts, the court in *Anthony Distributors* also held that this relaxation does not negate the plaintiff's duty to plead adequately the elements of content and place; finding that the plaintiff failed to plead the locations of the alleged fraud, the court dismissed the fraud claims with ten days' leave to amend. *Id.* at 1366.

5. The counterclaim defendants' arguments regarding the dismissal of Counts 1 through 5 for failure to plead detrimental reliance will be addressed below, when the court takes up the issue of choice-of-law.

## Choice of Law Arguments

■ The counterclaim defendants' motion seeks the dismissal of LATAM's fraud claims, as well as several other of the counterclaims, on other grounds which rely on New York law. This reliance is premised on the selection of New York law in the distributorship agreement which existed between the parties from April, 1996 through December, 1998 ("the 1996–98 agreement"). The counterclaim plaintiffs, however, assert that their contract and fraud claims relate not to this agreement, but to a much broader, independent "umbrella" contract between the parties which pre-dated the 1996–98 agreement by over three years, was renewed after the execution of the 1996–98 agreement, and is far broader in scope.[6] In light of these allegations, dismissal of the counterclaims which relate to this "umbrella" agreement would be premature because, on a motion to dismiss, the complaint is construed liberally, all allegations therein are taken as true, and dismissal is warranted only when it is beyond doubt that the counterclaim plaintiffs can prove no set of facts which would entitle them to relief. The relationship between GE and LATAM was complex, far-reaching, and long-term;[7] thus, this

---

6. This allegation is contained in Count 8 of LATAM's amended complaint, which states that in November, 1993, the parties entered a contract pursuant to which the counterclaim plaintiffs agreed to invest in developing the Peruvian market for GE products, and GE agreed to appoint LATAM its exclusive distributor. The counterclaim defendants have not sought dismissal of Count 8.

7. This fact is further evidenced by the counterclaim defendants' motion to compel arbitration, which cited three agreements between the parties, apart from the 1996–98 distributorship agreement. The counterclaim plaintiffs assert that their multi-dimensional relationship with GE encompassed fourteen

court requires more detailed information than can be gleaned from the complaint, in order to sort through the parties' claims. The counterclaim defendants' objections to Counts 1 through 5, 9, 10, 11, and 13 may be renewed at the summary judgment stage, at which time the factual developments necessary to the resolution of this case will have occurred.

The court has considered the counterclaim defendants' argument that should this broad-reaching "umbrella" agreement exist, Florida's strong public policy in favor of enforcing its statute of frauds, which mandates a writing for contracts not to be performed within one year, would bar any and all claims under it. This argument assumes too much at this stage. The process of this case will compel the counterclaim plaintiffs to bring forth evidence, if any exists, of this overarching "umbrella" contract, at which time the court will be able to discern the circumstances, if any, of its making and terms, which law governs it, the weight of the evidence supporting it, and its effect, if any, on the other written agreements between the parties. As the court does not find the counterclaim defendants' argument to be persuasive, and will allow further development of the facts regarding the "umbrella" agreement, the counterclaim plaintiffs' motion to strike this argument will be denied. Accordingly,

**IT IS ORDERED** that the motion for partial dismissal is **GRANTED IN PART,** insofar as it seeks to dismiss Counts 1 through 5 of the counterclaim plaintiffs' amended complaint for failure to plead with the specificity required by Rule 9. Counts 1 through 5 are **DISMISSED,** but the plaintiffs will have **fifteen (15) days** from the date of entry of this order in which to amend their complaint.

**IT IS FURTHER ORDERED** that the motion for partial dismissal is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the counterclaim plaintiffs' motion to strike is **DENIED.**

**IT IS FURTHER ORDERED** that the counterclaim plaintiffs' filings entitled "Notice of Filing Supplemental Authority" are construed as motions for leave to file sur-replies, which are **GRANTED** and have been considered.

formal written contracts, covering at least five of GE's lines of business, and many other less formalized commercial transactions.