[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV - 2 2000
THOMAS K. KAHN
CLERK

_____

No. 00-10167

_____

D. C. Docket No. 99-02651-CV-S-NE

BARRY P. LANGFORD, individually
as representatives of a class of similarly
situated persons, LUCIA KAYE MORGAN,
individually and as representative of a class
of similarly situated persons, et al.,

                                                    Plaintiffs-Appellants,

versus

RITE AID OF ALABAMA, INC.,
RITE AID CORPORATION,  et al.,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(November 2, 2000)**

Before COX , WILSON and GIBSON*, Circuit Judges.

WILSON, Circuit Judge:

* Honorable John R. Gibson, U.S. Court of Appeals for the Eighth Circuit, sitting by
designation.

Plaintiffs appeal from the district court's dismissal of their civil RICO claim against Rite Aid of Alabama, Inc., in which plaintiffs argued that Rite Aid had implemented a scheme to defraud its uninsured consumers of prescription medication by charging them higher prices for medication than it charged its insured customers, and failing to disclose this fact. Plaintiffs contend that this differential pricing policy violated federal statutes prohibiting mail and wire fraud (18 U.S.C. §§ 1341, 1343), and that violations of those statutes constitute predicate offenses giving rise to civil RICO liability. The district court dismissed the complaint for failure to state a claim, finding that appellees had no affirmative duty to disclose their pricing practices, and that silence in the absence of a duty to speak could not constitute fraud. The district court relied almost exclusively upon the common law of Alabama to come to its conclusion. We find that the district court's exclusive focus on state law in evaluating the scope of the federal mail and wire fraud statutes was unduly narrow. Nonetheless, the district court's ultimate conclusion in this case was correct–Rite Aid was not subject to a duty to reveal its differential pricing policy, and its failure to disclose its retail pricing structure was not fraudulent. We therefore affirm the decision of the district court.

BACKGROUND

Rite-Aid, Inc., a Delaware Corporation, is a large retail pharmacy chain, with over 80,000 employees in more than 3,000 store locations. The corporation does business in over 30 states both directly and through its wholly owned subsidiaries. Rite Aid of Alabama is a wholly owned subsidiary of the parent corporation, and handles Rite-Aid's retail operations throughout the state.

The plaintiffs are residents of Madison County, Alabama, and were regular customers of a local Rite Aid pharmacy. At some point(s) between July of 1995 and October of 1999, each of the plaintiffs lacked medical insurance that would reimburse them for the cost of prescription medication. They therefore personally bore the costs of their prescription drug purchases from Rite Aid during the periods that they were uninsured.

On September 30, 1999, plaintiffs initiated this action in the district court, alleging that Rite Aid maintained an elaborate scheme to defraud uninsured customers by increasing the prices of prescription drugs for customers lacking insurance. Plaintiffs claimed that Rite Aid maintained a policy of charging the uninsured higher prices for prescription medication, and failed to disclose this fact to its uninsured consumers. Rite Aid allegedly implemented this policy in three ways: (a) through an online computer network that would automatically increase

3

the price of prescription drugs once the operator noted that the customer was uninsured, (b) through managerial and staff training policies that ensured that employees would know to increase the retail price for uninsured consumers, and (c) through Rite Aid's intensive monitoring of the extent to which its individual pharmacies participated in "up charging" individual consumers through the online computer system. Plaintiffs charged that this pricing policy and its implementation were little more than fraudulent attempts to prey upon the vulnerabilities of uninsured consumers, and because implementing the pricing policy involved the use of interstate wires and mails, Rite Aid's actions constituted mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. As such, plaintiffs alleged that mail and wire fraud were the relevant "predicate offenses" for a civil RICO action, and sought relief pursuant to 18 U.S.C. § 1962(a)-(d)(the civil RICO act). Plaintiffs also sought relief on several state law claims arising out of the transactions, and asked the court to certify as a class all uninsured consumers of prescription drugs that had patronized Rite Aid pharmacies over the past five years. On October 19, 1999, plaintiffs amended their complaint, adding a new named plaintiff and amplifying their civil RICO charges.

Rite Aid responded to the charge by filing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The gist of Rite

Aid's motion was that plaintiffs failed to allege a predicate offense as required by the provisions of the RICO act, because the conduct ascribed to Rite Aid in the complaint, even if true, could not constitute mail or wire fraud under the terms of the relevant federal statutes. Rite Aid argued that retailers have no affirmative duty to disclose their pricing schemes to consumers; as such, their failure to disclose the pricing scheme could not legally be fraudulent.

The district court granted Rite Aid's Rule 12(b)(6) motion. The court focused its attention on narrow question of whether the federal mail and wire fraud statutes imposed a duty of disclosure upon Rite Aid in this case. Relying heavily upon Alabama common law, the court determined that Rite Aid owed no such duty of disclosure to plaintiffs. With plaintiff's RICO claim thereby dismissed, the court had no jurisdictional foundation to review plaintiff's separate state law claims, and declined to hear them. Plaintiffs filed this appeal in a timely fashion.

DISCUSSION

Plaintiffs essentially make two arguments on appeal. First, they contend that the district court erred in relying upon state law to ascertain whether Rite Aid owed plaintiffs a duty to disclose their pricing policies pursuant to 18 U.S.C. §§ 1341 and 1343. Plaintiffs contend that questions involving the interpretation of the mail

5

and wire fraud statutes are matters of federal law and federal law alone. Secondly, plaintiffs contend that Rite Aid owed its uninsured consumers a duty to disclose its pricing structure, and that the failure to do so subjects Rite Aid to liability under the mail and wire fraud statutes.

We apply *de novo* review to a district court's dismissal of an action for failure to state a claim. *See  Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).  A court may dismiss a complaint for failure to state a claim only if it is clear that the plaintiff alleged no facts which could lead to any judicial relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Stephens v. H.H.S.*, 901 F.2d 1571, 1573 (11th Cir. 1990); *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988).

The provisions of 18 U.S.C. § 1961 *et seq.* (the RICO Act) provide civil and criminal  liability for persons engaged in "a pattern of racketeering activity." *See* 18 U.S.C. § 1962 (a-d). Persons injured by reasons of a RICO violation have a civil cause of action under the terms of the act. *See* 18 U.S.C. § 1964. The four elements of civil RICO liability are (1)conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Durham v. Business Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks omitted). Plaintiffs in such an action must identify and prove a pattern of racketeering activity, defined as two

"predicate acts" of racketeering activity within a 10 year period. *See* 18 U.S.C.§

1961(5). The phrase "racketeering activity" is defined as including any act which is

indictable under a lengthy list of criminal offenses, including the federal statutes

prohibiting mail and wire fraud. Plaintiffs in this action seek to show that Rite Aid

violated the federal mail and wire fraud statutes, and thus committed the requisite

predicate acts for civil RICO liability.

A plaintiff must prove the following elements to establish liability under the

federal mail and wire fraud statutes: (1) that defendants knowingly devised or

participated in a scheme to defraud plaintiffs,(2) that they did so willingly with an

intent to defraud, and (3) that the defendants used the U.S. mails or the interstate

wires for the purpose of executing the scheme. *See Neder v. United States*, 527

U.S. 1, 24-25 (1999); *United States  v. O'Malley*, 707 F.2d 1240, 1246-47(11th

Cir. 1983). Intent to defraud need not be shown through active

misrepresentation–material omissions can be fraudulent if they are intended to

create a false impression. *See Beck v. Prupis*, 162 F.3d 1090, 1096 (11th Cir.

1998); *O'Malley*, 707 F.2d at 1247. Plaintiffs in the instant case charge that Rite

Aid suppressed the fact that it was charging uninsured consumers a premium price

for prescription medication, and that this omission was enough to show a

fraudulent intent by Rite Aid.

7

The district court found that no liability could attach under the mail and wire fraud statutes unless Rite Aid was found to have violated a duty to disclose the pricing information to the plaintiffs. There has been some dispute at the circuit level concerning when a "duty to disclose" can arise for the purposes of the federal mail and wire fraud statutes. Plaintiffs contend that a duty need not be formally imposed by statute or regulation; rather, they argue that a duty to disclose can be found through an examination of the relationship between the parties. At least one case from another circuit has rejected this contention, and held that only the abrogation of a formal statutory, contractual, or regulatory duty can give rise to liability under sections 1341 and 1343. *See Reynolds v. East Dyer Dev. Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989) ("mere failure to disclose, absent something more" cannot constitute mail or wire fraud). Other circuits have found that a duty to disclose can be inferred by the relationship between the parties, and need not be formalized through a statute or regulation. *See United States v. Cochran*, 109 F.3d 660, 665 (10th Cir. 1997)("while a fiduciary relationship is not an essential element of a wire fraud prosecution. . .it can trigger a duty of disclosure as can some other relationship of trust and confidence between the parties.").

Our own precedent tends to support the latter of the two positions. *See United States v. Brown*, 79 F.3d 1550, 1557 ("[C]ertain people must always

disclose facts where non-disclosure could result in harm. This circumstance exists when there is a special relationship of trust, such as a fiduciary relationship between people"); *United States v. Ballard*, 663 F.2d 534 (5th Cir. Unit B Dec. 1981), *modified in part on other grounds*, 680 F.2d 352 (1982) (duty to disclose may be imposed by federal or state statute or may arise from the relationship itself). The texts of the mail and wire fraud statutes are also informative, in that they do not include any language indicating that an independent duty to disclose is necessary for liability under their terms. *See* 18 U.S.C. §§ 1341, 1343.

We therefore feel that it would be an error to find that a duty to disclose information for purposes of the federal mail and wire fraud statutes can only be found where a statute, regulation, or formalized legal relationship between the parties expressly delineates such a duty. Plaintiffs are correct in their assertion that concealment of critical data, even without a formalized duty to disclose that data, can constitute mail and/or wire fraud in certain situations. Schemes to defraud can take many forms–criminal ingenuity is an amazing, if disturbing, thing to behold. It would be unduly constrictive to hold that a duty to disclose can only exist where it is statutorily or contractually implied; the complexity of transactional relationships is such that duties to disclose may exist in other situations if the transaction is to be legitimate. We can envision many situations in which a failure

9

to disclose information could constitute fraud pursuant to 18 U.S.C. §§ 1341 and 1343, even when no duty to disclose exists independently. Determinations as to whether a duty to disclose information exists must be made on a case by case basis, with appropriate attention given to the nature of the transaction and the relationship between the parties.

Applying these principles to the instant case, we first must determine whether the positive law contains any statute or regulation that would impose a duty upon Rite Aid to disclose its prescription drug pricing structure to its uninsured retail customers. Despite its efforts to locate such a duty in federal and state law, plaintiffs have not cited a statute or regulation that can be fairly applied to this situation. Nothing in the American Pharmaceutical Association's standards imposes a duty to disclose this sort of pricing information to plaintiffs. If a duty to disclose does in fact exist in this case, it will have to be inferred by the nature of the relationships and transactions involved, not by reference to an independent duty to disclose found in the law.

In its exploration of the nature of the relationship and duties owed between Rite Aid and the plaintiffs, the district court relied exclusively upon the common law of Alabama, and whether that body of law could be construed to impose duties on retailers in similar situations. Its discussion of the Alabama precedent

10

was comprehensive and helpful, and we adopt its finding that no duty to disclose can be located in Alabama law in this circumstance. This inquiry, however, must be considered incomplete. In exploring the question of whether a duty to disclose exists in a particular situation, federal courts must go beyond state common law, and conduct an inquiry into relevant federal sources of authority. *See United States v. Devegter*, 198 F.3d 1324, 1329 (11th Cir. 1999) ("The nature and interpretation of the duty owed is a question of federal law."); *Ballard*, 663 F2d at 541("[t]he duty to disclose. . .may be imposed by state or federal statute or may arise from the employment relationship itself."); *McNally v. United States*, 483 U.S. 350, 377 n.10 (Stevens, J. dissenting)(fraudulent scheme need not violate state law to support federal mail fraud conviction). State law is simply not exhaustive on this point–the fact that no duty to disclose retail pricing schemes can be located in analogous Alabama cases does not mean that no such duty can be located in federal law. The district court's analysis on the issue of whether a duty to disclose can be inferred is thus incomplete.

However, the fact that the district court used unduly constrictive methods in evaluating this question does not mean that it reached an improper result. A close examination of the relationship between Rite Aid and the plaintiffs in the context

11

of the relevant federal law indicates that Rite Aid was under no duty to disclose its pricing structure to plaintiffs.

As a general matter of federal law, retailers are under no obligation to disclose their pricing structure to consumers. *See Bonilla v. Volvo Car Corp.*, 150 F.3d 62, 71(1st Cir. 1998); *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 656 (S.D.N.Y. 1996). Plaintiffs have failed to identify any federal case where such duty was imposed on retailers; in fact, variable pricing is the norm in many industries. Airlines frequently charge different groups of consumers different rates for the same seat, hotels often charge different rates to different consumers for the same room, and car dealerships sell identical vehicles for a variety of prices, depending upon the identity (and savvy) of the consumer. There are a number of legitimate business reasons for doing this, obnoxious as it may seem for the individual consumer forced to purchase an item at a different price from his friends. Differential pricing alone is not a fraudulent practice; plaintiffs must assert some particular reason why the relationship in this case was such that non-disclosure of the differential pricing structure constitutes a violation of the mail and wire fraud statutes.

Two facts about the relationship between Rite Aid and plaintiffs make Rite Aid's nondisclosure of its differential pricing policy troubling: the fact that

plaintiffs were uninsured consumers, and the fact that Rite Aid was not an ordinary retailer, but a pharmacy employing licensed pharmacists to perform professional services. Taking the initial concern first, we should note that prescription medication is an expensive commodity in a relatively inflexible market. Many patients pick up their prescriptions on the way home from the hospital, and may have little inclination or ability to comparison shop at that point. Uninsured consumers, who bear the full cost of their prescription needs, are especially sensitive to high drug prices. They also arguably have less bargaining power than insured consumers, who have large insurance entities working on their behalf to keep prices as low as possible. It can be argued that Rite Aid's policy is little more than a deceptive effort to soak its most vulnerable consumers.

Nonetheless, uninsured status is not an impediment *per se* to information gathering on the open market. In an open market economy, consumers have the appropriate incentives to obtain information about acceptable cost of consumer goods, and to make purchases from the retailer who most closely matches that price. We do not expect retailers to disclose information about their pricing schemes–consumers are the actors who are best able to gather pricing information and put it to its highest and best use. If uninsured consumers were somehow less able to shop around and identify attractive drug prices than were other consumers,

the situation may have demanded that Rite Aid make certain disclosures to them. However, uninsured consumers are just as capable of seeking and using information as are others. In fact, because the uninsured are shouldering the entire cost of their prescription drug needs, they have even more powerful incentives than insured consumers do to actively obtain information about retail drug prices. Rite Aid's failure to disclose its pricing practices seems less an element of a fraudulent scheme than a powerful argument for uninsured consumers to seek another pharmacy that makes some effort to retain their business.

It is true that pharmacists and their patients share an intimate bond, and that relationship gives rise to certain duties on the part of the pharmacist. However, plaintiffs have been unable to identify a case or persuasive authority holding that pharmacists have a duty to disclose their parent company's pricing structure with regard to prescription drugs . Pharmacists owe duties to their patients ranging from diligence in recommending medication to confidentiality in maintaining patient's records; however, nothing in their professional code of conduct suggests, even obliquely, that pharmacists violate that duty by not disclosing the pricing policies of their pharmacy. Nothing in the record suggests that Rite Aid's pharmacists breached their code of conduct in any way, and we decline to infer the duty to disclose plaintiffs seek in this case.

In conclusion, plaintiffs have not alleged any facts that would suggest that Rite Aid was subject to a duty to disclose the fact that it charged plaintiffs more for their  prescription medication than it charged other consumers. Nothing in the positive law imposes any such duty on Rite Aid, and the relationship between Rite Aid and plaintiffs was not such that a duty can be inferred by reference to federal law. As such, plaintiffs have failed to allege a predicate act giving rise to RICO liability, and the district court did not err when it granted Rite Aid's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

AFFIRMED.