PORTIONPAC CHEMICAL
CORPORATION,
Plaintiff,

v.

SANITECH SYSTEMS, INC., Gregory
A. Guice, and William Burnside,
Defendants.

No. 8:01–CV–1297–T–17MAP.

United States District Court,
M.D. Florida,
Tampa Division.

June 14, 2002.

Lonnie L. Simpson, Piper Rudnick, LLP, Tampa, FL, Barry M. Heller, J. T. Westermeier, John J. Dwyer, Piper, Marbury, Rudnick & Wolfe, LLP, Washington, DC, for Plaintiff.

Jeffrey D. Keiner, Mark Nelson Miller, Frank A. Hamner, Nicolette M. Corso, Gray, Harris & Robinson, P.A., Orlando, FL, for Defendants.

### ORDER

KOVACHEVICH, Chief Judge.

THIS CAUSE comes before the Court for consideration of Defendants' Motion to Dismiss Counts 5, 8, 9, 18, 19, 20 and 21

and Incorporated Memorandum in Support (Dkt. No. 81); and Plaintiff's Opposition to Defendants' Motion to Dismiss Counts 5, 8, 9, 18, 19, 20 and 21 (Dkt. No. 84).

### Factual Background

Plaintiff, Portion Pac Chemical Corporation (Plaintiff) created the SFSPac Program, a food service sanitation package of products and methodologies that Plaintiff claims is unique and distinctive. The SFSPac Program is directed at school districts and includes, among other things, color-coordinated and portion-controlled cleaning products; training programs; computer-generated reports; and inventory control features.

In 1993, Plaintiff and Defendant Sanitech Systems, Incorporated (Defendant Sanitech)[1] entered into a distributorship agreement in which Defendants agreed to distribute Plaintiff's line of food service sanitation products to school districts in Florida. To distribute the products to school districts, Defendants were required to submit the products through the competitive-bidding process. Each school specified the products that were required to be included in each bid.

During the term of the agreement between the parties, Defendants were distributing other products to the school district. In 2000, Defendants terminated the distributorship agreement with Plaintiff in accordance with the terms of the agreement. Subsequently, Defendants began offering a food service sanitation package similar to the SFSPac Program that Plaintiff offered.

### Procedural Background

On July 9, 2001, Plaintiff brought suit in this Court for copyright and trade dress

---

1. The Court will refer to Defendant Sanitech, Defendant Gregory Guice (Defendant Guice), and Defendant William Burnside (Defendant Burnside) collectively as "Defendants" throughout the remainder of this Order.

infringement, among other claims. Additionally, Plaintiff moved for a preliminary injunction. Defendants then filed a counterclaim, asserting causes of action against Plaintiff for copyright infringement; violations of the Sherman Act; tortious interference with business relationships; violations of the Florida Deceptive and Unfair Trade Practices Act; and unfair competition. Additionally, Defendants filed their own motion for preliminary injunction. Now, Defendants move to dismiss Counts five, eight, nine, eighteen, nineteen, twenty, and twenty-one.[2]

### Standard of Review

In ruling on a motion to dismiss, the court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 56–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court must take all material allegations of the complaint as true and liberally construe those allegations in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, a plaintiff may not merely "label" claims to survive a motion to dismiss. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996).

At a minimum, the complaint must provide a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed. R.Civ.P. 8(a)(2)). When, on the basis of a dispositive issue of law, no construction of the factual allegation will support the cause of action, dismissal of the complaint

is appropriate. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir. 1991). Additionally, "[c]laims under [the Federal Racketeering Influenced and Corrupt Organizations Act (RICO), Title 18, United States Code, Section 1961, *et seq.*] must be subjected to scrutiny due to their potential for abuse by civil litigants." *Bill Buck Chevrolet v. GTE Fla.*, 54 F.Supp.2d 1127, 1137 (M.D.Fla.1999) (quoting *Ste Ame Isorait v. Atlantic Mut. Co.*, 1993 WL 37330, at *3 (E.D.N.Y.1993)).

### Discussion

### I. RICO Claims

Defendants claim that Plaintiff's complaint should be dismissed because it fails to state a claim under the Federal Racketeering Influenced and Corrupt Organizations Act (RICO), Title 18, United States Code, Section 1961, *et seq.* Congress designed RICO as a flexible tool to fight organized crime. As such, it makes the following activities unlawful:

(a) investing income derived, directly or indirectly, from a pattern of racketeering activity through collection of an unlawful debt in any enterprise which affects interstate commerce; (b) acquiring or maintaining an interest in any enterprise which affects interstate commerce through a pattern of racketeering activity or through collection of an unlawful debt; (c) conducting or participating in the affairs of any enterprise which affects interstate commerce through a pattern of racketeering activity or collection of an unlawful debt; or (d) conspiring to

---

**2.** The Court notes that Plaintiff has voluntarily dismissed Counts three, five, and seven. Additionally, here, Defendants move to dismiss Count eight—Plaintiff's copyright infringement claim for the SFSPac labels; however, the count involving the SFSPac labels is really Count seven of the complaint, not Count eight. Therefore, the Court will not address Defendants' Motion to Dismiss Counts five and seven, and the motion as to these Counts is denied as moot.

violate any of the provisions of Section 1962(a)-(c).

18 U.S.C. § 1962.

"Racketeering activities" covers a wide-range of federal and state crimes, including acts that are " 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that [are] 'punishable' under federal law." *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 482, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (quoting 18 U.S.C. § 1961(1)).

To engage in a "pattern of racketeering activity," the defendant must have participated in "at least two acts of racketeering activity, one of which occurred after the effective date of [RICO] and the last of which occurred within ten years (excluding any term of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Finally, "enterprise" is defined under the statute as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(c).

RICO establishes both criminal and civil penalties for violations of Section 1962. The civil remedies provision provides a private cause of action for "any person injured in his business or property by reason of a violation of Section 1962." 18 U.S.C. § 1961(c). However, as the United States Supreme Court noted, "in its private civil version, RICO is evolving into something quite different from the original conception of its enactors." *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479, 482, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The elements of a civil RICO claim are: "(1) a violation of section 1962; (2) injury to business or property; and (3) that the

violation caused the injury." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991).

### A. Violation of Section 1962

■ Defendants assert that this Court has previously stated that the failure to specify which of the four provisions of Section 1962 that Defendants allegedly violated is fatal its claim. *Bill See Buck Chevrolet v. GTE Fla.*, 54 F.Supp.2d 1127, 1132 (M.D.Fla.1999). In *Bill Buck*, like here, the defendant argued that the plaintiff's failure to specify the provision of Section 1962 that the defendant violated was fatal to the claim; however, unlike Defendants' assertions, this Court *actually* stated that the defendant's *argument* about the failure to specify the provision of section 1962 had some support, not that the plaintiff's failure to specify the section was fatal to his claim. Moreover, the Court went on to clarify its position, finding that, "to state a claim under [Section 1962], a plaintiff must allege facts demonstrating that the defendant engaged in a pattern of racketeering activity and that an enterprise existed," not that Plaintiff must specify the exact provision of Section 1962 that Defendants violated. *Id.* at 1132. Therefore, the Court must determine whether Plaintiff alleges facts in Count eighteen of its Complaint demonstrating that Defendants engaged in a pattern of racketeering and that an enterprise existed.

### *Pattern of Racketeering Activity*

In showing a pattern of racketeering activity, the plaintiff must allege "at least two racketeering predicate acts that are related and that amount to, or threaten the likelihood of, continued criminal activity." *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 237–238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Therefore, in order to survive a motion to dismiss, the plaintiff

must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts. *Republic of Panama v. BCCI Holdings,* 119 F.3d 935, 949 (11th Cir.1997).

### 1. Racketeering Activity

Plaintiff alleges that Defendants engaged in the following predicate acts: mail fraud in violation of Title 18, United States Code, Section 1341; wire fraud in violation of Title 18, United States Code, Section 1343; and transportation in interstate stolen commerce in violation of Title 18, United States Code, Sections 2314–2315. Each of these statutes *requires proof of scienter. BCCI Holdings,* 119 F.3d at 949 (citing *Pelletier,* 921 F.2d at 1498).

To establish liability under the federal wire and mail fraud statutes, a plaintiff must show the following elements: "(1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Langford v. Rite Aid of Alabama, Inc.,* 231 F.3d 1308, 1312 (11th Cir.2000) (citing *Neder v. U.S.,* 527 U.S. 1, 24–25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).

Here, Plaintiff alleges that Defendant Burnside and Defendant Guice "communicated and conspired to communicate via U.S. Mail and interstate telephone misrepresenting their rights in and to the imitation SFSPac Program and related products . . . which they knew or should have known to be false and in furtherance of a scheme or artifice to defraud by selling and providing a 'knock off' imitation SFSPac Program," and that they "communicated and conspired to communicate via U.S. Mail and interstate telephone using misleading and deceptive reference letters and proposals which they knew or should have known to be false and in furtherance

of a scheme or artifice to defraud by selling and providing a 'knock off' imitation SFSPac Program."

 Although proof of mail or wire fraud requires a showing that the defendant had the knowing intent to defraud, a RICO plaintiff does not need direct proof of scienter. *Bill Buck Chevrolet,* 54 F.Supp.2d at 1132. However, "[a] RICO plaintiff's allegations of scienter cannot be 'merely conclusory and unsupported by any factual allegations.' " *Id.* (quoting *Republic of Panama v. BCCI Holdings,* 119 F.3d 935, 949 (11th Cir.1997) (quoting *O'Malley v. O'Neill,* 887 F.2d 1557, 1561 (11th Cir.1989))). The Court finds that the allegations in Plaintiff's complaint do not give rise to a "strong inference" that Defendants possessed the specific intent necessary for the alleged predicate acts. *See Beck v. Manf. Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987) (stating that RICO plaintiffs must "provide some factual basis for conclusory allegations of intent"). As such, its allegations of mail and wire fraud are insufficient to withstand Defendants' Motion to Dismiss. In the absence of mere conclusory allegations demonstrating that Defendants had the scienter necessary to commit mail or wire fraud, the Court finds that Plaintiffs have not stated a RICO claim.

 Additionally, the Court notes that the mail and wire fraud statutes are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). Under Rule 9(b), Plaintiff is required to plead its averments of fraud with particularity. Besides failing to state a claim under Section 1962, Plaintiff has failed to plead the predicate acts with sufficient particularity; therefore, the claims must be dismissed.

### 2. Pattern

If the plaintiff has pled the requisite predicate acts, the Court must look to see

if he or she has pled the pattern of such acts. Pleading that a pattern exists requires the plaintiff to plead both that the predicate acts are related to each other and that they either constitute or threaten long-term criminal activity. *Northwestern Bell,* 492 U.S. at 239, 109 S.Ct. 2893. Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* The continuity aspect refers to either a closed period of repeated conduct or to past conduct that, by its nature, projects into the future with a threat of competition. *Bill Buck Chevrolet,* 54 F.Supp.2d at 1134 (quoting *Northwestern Bell,* 492 U.S. at 241, 109 S.Ct. 2893). "[T]he threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Id.* (quoting *Northwestern Bell,* 492 U.S. at 243, 109 S.Ct. 2893).

Although the Court finds that Plaintiff has failed to plead the requisite predicate acts, it has pled a pattern necessary for a RICO claim in that Plaintiff alleged sufficient facts giving rise to an inference that Defendants' use of interstate mail and telephones in the sale of their sanitation products is part of their regular way of doing business. Moreover, the acts complained of have "the same or similar purposes" necessary to establish a "pattern" under RICO.

### Enterprise

"The definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes." *U.S. v. Goldin Industries, Inc.,* 219 F.3d 1271 (11th Cir. 2000) [hereinafter *Goldin II* ]. In this Circuit, the "person" and the "enterprise"

cannot be the same. *U.S. v. Goldin Industries, Inc.,* 219 F.3d 1268, 1269 (11th Cir.2000) (en banc) [hereinafter *Goldin I* ]. The existence of an enterprise may be demonstrated "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

■ Here, the Court is unable to tell whether Plaintiff has alleged an enterprise for the purposes of RICO. There are no facts that allege an ongoing organization or that allege that the various associates function as a continuing unit. "A nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of a RICO offense." *Richmond v. Nationwide Cassel, L.P.,* 52 F.3d 640, 645 (7th Cir.1995). Because the presence of an enterprise is an essential element of a RICO complaint, merely identifying the type of business in which the members of the alleged enterprise engage is not enough either to allow the Court to evaluate whether the alleged enterprise constitutes an enterprise within the meaning of RICO or to provide Defendant fair notice of the claim against which it must defend. Here, Plaintiffs have failed to allege sufficient facts to show that a RICO enterprise in fact exists. Thus, the complaint fails to show a violation of Section 1962 and fails to state a claim of relief under RICO.

### B. Causation of Injury

■ A plaintiff suing under civil RICO must show that his injury was proximately caused by the commission of the predicate acts. In *Pelletier v. Zweifel,* the Eleventh Circuit explained:

[t]here is some question whether this proximate cause requirement limits damages recoverable to those caused di-

rectly by the predicate act or to those caused indirectly by the predicate act. We have taken the more restrictive view, holding that a plaintiff has standing to sue under section 1964(c) *only if his injury flowed directly from the commission of the predicate acts.* This means that when the alleged predicate act is mail or wire fraud, *the Plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme.*

921 F.2d 1465, 1499–1500 (11th Cir.1991) (internal citations omitted) (emphasis added). A "scheme to defraud" involves making misrepresentations "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Wilson v. De Angelis,* 156 F.Supp.2d 1335, 1338 (S.D.Fla.2001) (quoting *Pelletier,* 921 F.2d at 1498–1499).

■ Here, although Plaintiff alleges that it was injured because Defendants used products that were similar to its SFSPac program, it has failed to allege that it was "a target of the scheme to defraud" or that it relied on misrepresentations made in furtherance of Defendants' alleged scheme to defraud. Moreover, Plaintiff has made no allegations, nor are there any factual allegations to support the inference that Defendants made misrepresentations in selling their sanitation products. Therefore, Plaintiff has failed to allege injury flowing from the requisite predicate acts, and Count eight of Plaintiff's complaint must be dismissed.

## II. Trade Dress and Trade Mark Dilution Claims

### A. Lanham Act Dilution Claims

Under the Federal Trademark Dilution Act of 1995 (FTDA), which amended Section 43 of the Lanham Act,

[t]he owner of a famous mark shall be entitled, subject to the principles of eq-

uity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

15 U.S.C. § 1125(c). To prove a dilution claim, a plaintiff must provide sufficient evidence that "(1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *Syndicate Sales, Inc. v. Hampshire Paper Corp.,* 192 F.3d 633, 639 (7th Cir.1999) (citing *Ringling Bros.–Barnum & Bailey Combined Shows, Inc. v. Utah Div. Of Travel Development,* 170 F.3d 449, 452 (4th Cir.1999)).

The FTDA defines dilution as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. The FTDA further provides a nonexclusive list of factors that a court may consider to determine whether the plaintiff's mark is famous or distinctive:

a) the degree of inherent or acquired distinctiveness of the mark; b) the duration and extent of the use of the mark in connection with the goods or services with which the mark is used; c) the duration and extent of advertising and publicity of the mark; d) the geographical extent of the trading area in which the mark is used; e) the channels of trade for the good or services with

which the mark is used; f) the degree of recognition of the mark in the trading areas and the channels of trade of the mark's owner and the person against whom the injunction is sought; g) the nature and extent of the use of the same or similar marks by third parties; and h) whether the mark was registered. 15 U.S.C. § 1125(c)(1).

■ In Count nine and twenty of its Complaint, Plaintiff asserts dilution claims under the Lanham Act for both its trade dress and its trademark. The Court finds that Plaintiff has alleged sufficient facts to withstand a motion to dismiss under these counts. Plaintiff has alleged facts that give rise to the inference that its trade dress and mark are famous, in terms of the factors listed in Section 1125(c)(1). Moreover, it has alleged facts that Defendants used Plaintiff's trade dress and trademark, after both became "famous" throughout the school sanitation business. Finally, Plaintiff has set forth sufficient facts that Defendants will dilute both its trademark and the trade dress. *See Panavision Intl. v. Toeppen,* 141 F.3d 1316, 1326 n. 7 (9th Cir.1998) (defining a type of dilution, called "blurring," as occurring "when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product").

Because Plaintiff's complaint states a cause of action under Section 43 of the Lanham Act, Defendants' motion is denied.

### B. Florida's Antidilution Statute

Section 495.151 provides that the Court may enjoin the use of the same or similar mark if the Plaintiff proves:

that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark . . . not-

withstanding the absence of competition between the parties or of confusion as to the source of the goods or services. Fla. Stat § 495.151.

■ Unlike trademark or trade dress infringement claims, the Florida Anti–Dilution Act is not intended to apply to the use of a similar mark on similar goods. The dilution concept is meant to apply to similar marks on dissimilar products. The doctrine "has no application when the question is whether the marks being used on goods of substantially the same descriptive properties are similar enough to cause confusion in the mind of consumers with respect to the source of the goods." *Community Fed. Savings & Loan Assoc. v. Orondorff,* 678 F.2d 1034, 1037 (11th Cir. 1982). "The antidilution statute is a broader claim than infringement, protecting the distinctiveness of the mark by prohibiting its use on products and services completely different from the original." *Freedom Savings & Loan Assoc. v. Way,* 757 F.2d 1176, 1186 (11th Cir.1985).

Here, Plaintiff's claim involves Defendants' alleged use of its trademark on similar goods. Because dilution claims, under Florida law, apply only to similar marks on similar products, Plaintiff has failed to state a claim, and Counts IX and XX must be dismissed with prejudice to the extent that they assert causes of action under Section 495.151 of the Florida Statutes.

### III. Common Law Trademark Claim

Under the common law, trademark rights "give the owner protection against the use of its mark on any product or service which would reasonably be thought by the buying public to come from the same source or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Tally–Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018, 1021 (11th Cir.1990).

■ To prevail on a common law trademark infringement claim,[3] where the

---

**3.** Analysis for trademark infringement under the Lanham Act also applies to claims of

mark has not been registered, a plaintiff must show that it has trademark rights on the mark or name at issue distinctive enough to deserve protection; and that the defendant's use of such mark or name is likely to cause consumer confusion as to the proper origin of the services offered. *Freedom Sav. & Loan Assn. v. Way*, 757 F.2d 1176, 1179 (11th Cir.1985).

■■■■ The level of protection afforded a mark is proportionate to the level of distinctiveness. Accordingly, the more distinctive the mark, the greater level of protection. *Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc.*, 828 F.Supp. 925 (M.D.Fla.1993). Here, Plaintiff claims that its color-coding scheme is distinctive to its SFSPac products and, therefore, is entitled to trademark protection. There are four categories of distinctiveness in which a mark may be classified: generic, descriptive, suggestive, and arbitrary or fanciful. *Id.* at 930–931. Additionally, in this Circuit, there are seven primary factors to consider in deciding whether there is a likelihood of confusion: 1) the type of mark at issue; 2) similarity of the mark; 3) similarity of products or services; 4) identity of purchasers and similarity of retail outlets; 5) similarity of advertising campaigns; 6) the defendant's intent; and 7) actual confusion. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir.1997).

■■ Looking at the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff alleges sufficient facts to find that Plaintiff's trademark in its color-coding scheme is distinctive enough to deserve protection. Specifically, Plaintiff alleges that its SFSPac "adopted a unique and distinctive color combination"

Florida common law trademark infringement. *Chanel, Inc. v. Italian Activewear of Fla., Inc.,*

and that the "colors are used to designate uniquely and distinctively each of the five main detergent products." Additionally, Plaintiff alleges that "the colors and color combination have garnered widespread publicity and public recognition in the marker for school food service and sanitation services, products and programs [since 1992]." Additionally, the Court finds that Plaintiff sufficiently alleged that Defendants use of the "imitation SFSPAC Products" will cause customer confusion. Therefore, Defendants' Motion to Dismiss must be denied.

## IV. Digital Millennium Copyright Claim

The Digital Millennium Copyright Act (DMCA) was enacted in 1998 to implement the World Intellectual Property Organization Copyright Treaty (WIPO Treaty), which provides, in relevant part, that contracting parties

> shall provide adequate legal protection and effective legal remedies against the circumvention of effective technological measures that are used by authors in connection with the exercise of their rights under this Treaty or the Berne Convention and that restrict acts in respect of their works, which are not authorized by the authors concerned or permitted by law.

WIPO Copyright Treaty, April 12, 1997, Art. 1, S. Treaty Doc. No. 1054–12 (1997), available at 1997 WL 447232.

The DMCA contains three provisions targeted at the circumvention of technological protections. Section 1201(a)(1)(A) prohibits a person from "circumventing a technological measure that effectively controls access to a work protected under Title 17 [governing copyright]." 17 U.S.C.

931 F.2d 1472, 1475 n. 3 (11th Cir.1991).

§ 1201(a)(1)(A). Section 1201(a)(2) "supplements the prohibition against the act of circumvention in paragraph (a)(1) with prohibitions on creating and making available certain technologies ... developed or advertised to defeat technological protections against unauthorized access to a work." *Universal City Studios, Inc. v. Reimerdes*, 111 F.Supp.2d 294, 316 (S.D.N.Y.2000) (citing H.R.Rep. No. 105–551(I), 105th Cong., 2d Sess. at 17 (1998)). Finally, Section 1201(b)(1) applies to trafficking in means of circumventing protection offered by a technological measure that effectively protects "rights of a copyright owner in a work or portion thereof." 17 U.S.C. § 1201(b)(1).

After looking at the sparse case law on the DMCA, and considering the legislative history behind the Act, the Court finds that the *Digital* Millennium Copyright Act does not allow a cause of action for Plaintiff's claim. As the Fourth Circuit pointed out,

> [t]he DMCA was enacted both to preserve copyright enforcement in the Internet and to provide immunity to service providers from copyright infringement liability for "passive," & "automatic" action in which a service provider's system engages through a technological process initiated by another without the knowledge of the service provider.

*ALS Scan, Inc. v. RemarQ Communities, Inc.*, 239 F.3d 619, 625 (4th Cir.2001) (citing H.R.Rep. No. 105–796, at 72 (1998), U.S.Code Cong. & Admin.News 1998, at 639, 648). Therefore, the Court finds that Count twenty-one of Plaintiff's complaint fails to state a claim and must be dismissed with prejudice. Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss Counts 5, 8, 9, 18, 19, 20 and 21 (Dkt. No. 81) be **GRANTED** in part and **DENIED** in part. Count eighteen is dismissed with leave to amend; Counts nine

and twenty are dismissed with prejudice to the extent that they state claims under Florida statutes, Section 495.151; and Count twenty-one is dismissed with prejudice. Plaintiff shall have ten (10) days to amend its complaint as to Count eighteen only, and Defendants shall respond to Plaintiff's amended complaint within ten (10) days from the date that Plaintiff's complaint is filed with this Court.